UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| ADVANCED PATHOLOGY SOLUTIONS, PLLC,<br><br>*Plaintiff,*<br><br>v.<br><br>ROBERT F. KENNEDY, in his official capacity as Secretary for the United States Department of Health & Human Services,<br><br>and<br><br>STEPHANIE CARLTON, in her official capacity as Acting Administrator of the Centers for Medicare and Medicaid Services,<br><br>*Defendants.* | Case No. 4:25-cv-229-JM |

## DECLARATION OF KEVIN HANNAH IN SUPPORT OF PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR A PRELIMINARY AND PERMANENT INJUNCTION

Kevin Hannah, pursuant to 28 U.S.C. § 1746, hereby declares as follows:

1. I am over 18 years of age and competent to make this Declaration. The evidence supplied in this Declaration is based upon my personal knowledge.

2. I am the Chief Executive Officer of Advanced Pathology Solutions, PLLC ("APS"), and submit this Declaration in support of Plaintiff's Reply Brief in support of its Motion for a Preliminary and Permanent Injunction.

3. I reaffirm the facts I declared in my March 20, 2025, Declaration in Support of Plaintiff's Motion for a Preliminary and Permanent Injunction, and state that those facts remain accurate.

1

4. APS is unique among pathology labs in the United States because it employees only gastrointestinal specialist and fellowship-trained pathologists. There are 13 such pathologists on staff at APS, which is among the most – if not the most – in the country.

5. APS employs these specialized pathologists to offer specialized and exception medical services to gastrointestinal patients with symptomatic disorders. Because APS is able to service patients nationwide, it provides diagnostic care that is not otherwise available in most local markets.

6. APS patients, including Medicare beneficiaries, will lose access to critical and specialized diagnostic care if APS is unable to continue its pathology operations.

7. APS's patients, including Medicare beneficiaries, will experience worse outcomes, less accurate diagnoses, and greater risk of illness and death if APS is not able to serve those patients as a result of CMS's suspension of payments to APS.

8. The suspension of payments by CMS to APS has substantially reduced APS's operations and threatens to put the company out of business.

9. The financial impact on APS caused by its suspension from receiving CMS payments has been extraordinary and likely irreversible.

10. Since the suspension was imposed, CMS has withheld a total of **$12,227,647.00** in payments otherwise owed to APS for services performed and billed to federal healthcare programs.

11. APS has operated at a loss in all months since the suspension was imposed, with only one exception. In March 2025, APS was profitable by a very small margin.

12. In January 2025, APS incurred a net loss of $115,315.43. APS would have earned profit absent the CMS suspension of payments to APS.

13. In February 2025, APS incurred a net loss of $406,315.75. APS would have earned profit absent the CMS suspension of payments to APS.

14. In April 2025, APS incurred a net loss of $53,975.51. APS would have earned profit absent the CMS suspension of payments to APS.

15. In May 2025, APS incurred a net loss of $485,698.06. APS would have earned profit absent the CMS suspension of payments to APS.

16. APS sold its Podiatry division in 2024 because it was critically reliant upon CMS payments to be profitable. APS has been unable to service its prior Podiatry clients as a result, and those clients are unlikely to ever return to APS.

17. In selling its Podiatry division, APS lost more than 50% of its overall revenue. Accordingly, the CMS suspension has drastically changed the nature and composition of APS's business.

18. APS was also forced to terminate its PCR wound testing, PCR stool testing, and other molecular pathology services because they also rely heavily on CMS payments, and APS's other services are not sufficiently profitable to allow APS to continue operations while performing these services without CMS payments.

19. APS is currently winding down its Stool Division because it also heavily relies upon CMS payments to be profitable, and APS cannot continue to operate at a net loss. However, the Stool division is critical for many APS customers. Those customers will now have to find alternative providers for Stool testing, which is likely to result in customers leaving APS altogether. It is unlikely that such customers will return.

20. None of the testing services or divisions identified above have been the subject of any investigation, inquiry, request, or purported claim by the federal government or any federal agency.

21. APS has lost more than 30 employees since the suspension was imposed, through terminations and because APS is financially unable to fill positions when an employee leaves.

22. APS will soon be unable to fully pay its vendors and is at risk of losing services due to nonpayment. If APS's vendors terminate the services they are providing, APS will no longer be able to operate.

23. I started APS to provide specialized, elite pathology services to patients nationwide, who otherwise would not have access to fellowship-trained pathologists. APS has always run a compliant business. It is simply devastating for APS to be run out of business for reasons that remain unexplained by the federal government, and which APS is completely unable to challenge.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 25, 2025.

**Kevin Hannah**
Chief Executive Officer
Advanced Pathology Solutions, PLLC