UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | |
|---|---|
| **ADVANCED PATHOLOGY SOLUTIONS, PLLC** | **PLAINTIFF** |
| v. | No. 4:25-CV-229 JM |
| **ROBERT F. KENNEDY, in his official capacity as Secretary of the United States Department of Health & Human Services; and DR. MEHMET OZ, in his official capacity as Administrator of the Centers for Medicare and Medicaid Services** | **DEFENDANTS** |

### DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND RESPONSE TO MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION

*Clarinda Home Health v. Shalala*, 100 F.3d 526 (8th Cir. 1996), is controlling Eighth Circuit precedent and compels the conclusion that this Court lacks subject matter jurisdiction to hear APS's challenge to CMS's temporary payment suspension. APS spends much of its 43-page brief trying in vain to find a way around *Clarinda*. In doing so, APS misrepresents the nature and scope of the temporary payment suspension and the government's investigation, and it attempts to shoehorn its claims into narrow and inapplicable jurisdictional exceptions to salvage its Complaint. But in the end, APS is situated identically to the plaintiff in *Clarinda*, and the Court must dismiss its claims under Fed. R. Civ. P. 12(b)(1). Likewise, because "it is not a violation of due process to temporarily withhold Medicare payments during an ongoing investigation for acts of fraud," *Clarinda*, 100 F.3d at 531, APS also has failed to state any claim for relief and dismissal is proper under Fed. R. Civ. P. 12(b)(6). Finally, APS has not established any entitlement to injunctive relief.

**I.     The Court Lacks Subject Matter Jurisdiction Over This Action.**

As the plaintiff, APS "bears the burden to establish subject matter jurisdiction." *Two Eagle v. United States*, 57 F.4th 616, 620 (8th Cir. 2023). APS has not met its burden. APS does not identify a single case where a court found subject matter jurisdiction to consider a challenge to a temporary Medicare payment suspension under similar circumstances, nor does APS respond to many of the cases cited in Defendants' Opening Brief concluding exactly the opposite. *See* Defs.' Br., Doc. No. 23, at 12 & n.4. Instead, in a last-ditch effort to manufacture a jurisdictional hook, APS offers only unsupported assertions that the government is not actually investigating APS and that the government has "indefinitely" suspended Medicare payments to APS. There is no legal or factual basis for the Court to weigh in on this dispute over a non-final agency action, much less provide APS the extraordinary relief that it seeks.

**A.     Binding Eighth Circuit Precedent Requires Dismissal of This Action for Lack of Subject Matter Jurisdiction.**

The Eighth Circuit's holding in *Clarinda* requires dismissal of this action for lack of subject matter jurisdiction. *See Clarinda*, 100 F.3d at 530-31. Just like APS, the plaintiff in *Clarinda* was under DOJ investigation for alleged Medicare fraud and tried to challenge a temporary CMS payment suspension while the fraud investigation continued. *See id.* at 527. The Eighth Circuit held that there was no subject matter jurisdiction to hear the dispute because CMS had not reached a final determination as to whether the suspended funds would ultimately be paid to the provider. *See id.* at 530-31. Numerous courts nationwide have reached the same outcome when considering similar challenges. *See* Defs.' Br., Doc. No. 23, at 12 & n.4. And for good reason: adopting APS's argument would invite every healthcare provider facing a fraud investigation and a payment suspension to circumvent the administrative process and instead

seek relief in federal court. This would undermine the Medicare Act and lead to a flood of litigation, frustrating Congressional intent and straining limited judicial resources.

Apparently realizing that *Clarinda* and similar decisions doom this case, APS tries to fabricate a distinction by claiming, without evidence and contrary to the facts, that the government is not actually engaged in an active fraud investigation. *See* Pl.'s Reply & Resp. Br., Doc. No. 27, at 8-9. This is absurd. The government has served 20 separate Civil Investigative Demands on APS and its owners and employees for interrogatory responses, documents, and testimony, and took sworn testimony from APS's owners the very same week that APS filed this action. *See* Defs.' Br., Doc. No. 23, at 12-13. APS does not contest these facts but complains that it has not *also* received investigatory requests directly from CMS, positing that the Court should discount the government's investigation as "only pursuant to Civil Investigative Demands." Pl.'s Reply & Resp. Br., Doc. No. 27, at 9, 34-35. But APS does not even try to explain how DOJ's use of CIDs could fail to rise to an ongoing fraud investigation into APS's conduct. As APS knows, DOJ is investigating allegations that APS engaged in Medicare billing fraud on behalf of HHS and CMS, and Civil Investigative Demands are a key investigative tool the government uses to advance such investigations. *See* Defs.' Br., Doc. No. 23, at 12-13. APS also complains that the government failed to provide even more detail about its active investigation for APS and the world to see. *See* Pl.'s Reply & Resp. Br., Doc. No. 27, at 8-9. APS plainly seeks to use this lawsuit to fish for information about the government's investigation. The government has not disclosed all details regarding its investigative activity to APS, nor is it obligated to do so.

APS also asserts—without support—that the temporary payment suspension is somehow "indefinite." *See id.* APS offers no explanation for how a temporary payment suspension identical to the one at issue in *Clarinda* amounts to an indefinite withholding of Medicare

payments—concluding simply that "It does." *See id.* at 2. APS's bare assertion cannot satisfy its burden to establish jurisdiction. As APS acknowledges, the Court may look beyond the pleadings and make factual findings related to subject matter jurisdiction—it does not have to take APS's word for it. *See id.* at 4-5. The facts here show that CMS implemented a temporary payment suspension based on credible allegations of fraud pursuant to its regulatory authority. *See* Defs.' Br., Doc. No. 23, at 4-7. And consistent with the regulatory safeguard at 42 C.F.R. § 405.371(b)(2), CMS reevaluated the suspension every 180 days, confirmed that APS remained under investigation, and notified APS of the same. *See* Pl.'s Mot., Ex. 4, Doc. No. 9-5. The two cases APS relies on to support its "indefinite" suspension argument are inapposite, as they concerned suspensions from state *Medicaid* programs and did not address subject matter jurisdiction or the collateral claim exception. *See* Pl.'s Reply & Resp. Br., Doc. No. 27, at 9 (citing *Alexandre v. Ill. Dep't of Healthcare & Fam. Servs.*, No. 20-6745, 2021 WL 4206792 (N.D. Ill. Sept. 15, 2021); *Maynard v. Bonta*, No. 02-06539, 2003 U.S. Dist. LEXIS 16201 (C.D. Cal. Aug. 29, 2003)). Those cases also involved significantly longer payment suspensions. *See Alexandre*, 2021 WL 4206792, at *8 (three-year suspension); *Maynard*, 2003 U.S. Dist. LEXIS 16201, at *59-61 (two-year suspension). Nonetheless, neither case concluded that the suspension was indefinite, only that it was a question of fact. *See Alexandre*, 2021 WL 4206792, at *8; *Maynard*, 2003 U.S. Dist. LEXIS 16201, at *59-61. There is no factual or legal basis for APS's conclusory assertions that Defendants intend to maintain the payment suspension beyond the scope permitted by regulation.[1]

---

[1] APS complains about the length of the payment suspension and the government's investigation, but delay by APS has substantially contributed to their duration. In connection with the investigation, APS has routinely sought additional time to comply with its deadlines. For example, APS took over two years to complete its CID productions and certify compliance. APS's owners and employees likewise took months past their original deadline to comply with

APS cannot ignore *Clarinda* or the governing statutory and regulatory scheme simply because it wants the government's investigation to end sooner. CMS's temporary suspension of payments to APS based on credible allegations of fraud was implemented pursuant to administrative procedure intended to protect the federal fisc from additional losses while the government investigates the potential misconduct. *See* 42 U.S.C. § 1395y(o); 42 C.F.R. §§ 405.370-405.375. This administrative procedure expressly provides that "[t]he rescission of the suspension and the issuance of a final overpayment determination to the provider or supplier may be delayed until resolution of the investigation." 42 C.F.R. § 405.372(c)(2)(ii). At that time, APS will have a full opportunity to challenge any overpayment determination through administrative channels and to seek judicial review once the administrative remedies are exhausted. 42 U.S.C. § 1395ff(b)(1)(A); 42 C.F.R. § 405.904(a)(2). For these reasons, courts have declined to "upset the balance Congress chose to strike between the competing considerations of individual hardship and systemic efficiency." *MedPro Health Providers, LLC v. Hargan*, No. 17 C 1568, 2017 WL 4699239, at *5 (N.D. Ill. Oct. 19, 2017) (citing *Heckler v. Ringer*, 466 U.S. 602, 627 (1984)). Accordingly, the Court must dismiss this action for lack of subject matter jurisdiction.

---

CIDs. The owners of APS also pushed their testimony dates back by weeks over the government's protests. When APS expressed an interest in negotiating a resolution of the government investigation, the government devoted substantial time and resources to engaging in good-faith settlement discussions, during which APS took weeks, and at times, months to respond to the government's proposals. Earlier this year, the parties attempted to engage in mediation. APS initially agreed then abruptly declined to participate after the government identified potential mediators and inquired about dates. APS should not be permitted to use the same delay it caused as an argument for why the temporary payment suspension should be terminated prematurely.

**B.      No Jurisdictional Exception Applies.**

Conceding that the Court does not have subject matter jurisdiction under 42 U.S.C. §§ 405(g) and 405(h) to challenge a non-final agency action, Pl.'s Reply & Resp. Br., Doc. No. 27, at 5, APS tries to fit this lawsuit into three narrow exceptions to the administrative exhaustion requirement that are reserved for extraordinary circumstances. But the present action involves an ordinary exercise of regulatory authority, and no rare exception to the administrative exhaustion requirement is available here.

*First*, the Court does not have jurisdiction pursuant to the "extremely narrow" preclusion of judicial review exception. *See Reg'l Home Health Care, Inc. v. Azar*, 488 F. Supp. 3d 827, 837 (D. Iowa 2020) (citing *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 19 (2000)), *aff'd sub nom. Reg'l Home Health Care, Inc. v. Becerra*, 19 F.4th 1043 (8th Cir. 2021). APS cannot show that it is facing "*complete* preclusion of judicial review." *Ill. Council*, 529 U.S. at 22-23. As the Eighth Circuit explained in *Clarinda*, a provider subject to a temporary payment suspension "will have its day in court" after the investigation concludes and "the Secretary has rendered [his] final decision." *Clarinda*, 100 F.3d at 530; *see also Ill. Council*, 529 U.S. at 13 (participation in "massive, complex health and safety program such as Medicare" comes with the tradeoff of "delay-related hardships" that do not amount to preclusion of judicial review).

APS claims that it will be deprived of judicial review because it is experiencing financial hardship and cannot wait for the administrative process to play out. But those assertions are speculative and unsupported. In fact, APS has provided conflicting declarations without any documentation or other information substantiating their conclusory assertions. In March 2025, APS CEO Kevin Hannah and APS Director of Finance Brandon Crain predicted that APS would "have insufficient funds to continue operations in 2-3 months." Hannah Decl, Pl.'s Mot., Doc.

No. 9-1, ¶ 25; Crain Decl., Pl.'s Mot., Ex. 5, Doc. No. 9-6, ¶ 13. But in a new declaration from Mr. Hannah submitted with its most recent brief, APS conceded that it was *profitable* in March 2025. *See* Hannah Decl., Pl.'s Reply & Resp. Br., Doc. No. 27-1, ¶ 11. Mr. Hannah now contends that there is a "risk" that APS could lose services sometime "soon" due to nonpayment of vendors, which could cause APS to cease operations. *Id.* ¶ 22.

These barebone and hypothetical assertions are unsupported by any accounting, financial, or other documents, and lack any detail. For example, Hannah does not explain which vendors APS may be unable to pay or when APS will be unable to pay them. Likewise, while the new Hannah declaration claims to provide APS's top-line "net loss" figures for select months, it does not corroborate or explain those figures, such as how the figures were calculated, what accounting methods were used, and what variables were taken into account, including whether any additional distributions were made to individual owners that could have contributed to the monthly loss amounts. *See id.* ¶¶ 12-15. The new declaration also does not contextualize these claims by explaining how much cash APS has on hand or in reserves, or whether APS has access to lines of credit or other sources of income that could impact its solvency. Now, nearly four months after APS submitted the first declarations, APS also has not updated its estimate as to when APS may go out of business, much less substantiated such a claim with specific details.

Speculative and self-serving statements are insufficient to invoke an exception to jurisdiction. *See Padda v. Becerra,* 37 F.4th 1376, 1384-85 (8th Cir. 2022) (finding provider could not show irreparable harm using similarly "vague and speculative" statements); *see also True Health Diagnostics, LLC v. Azar*, 392 F. Supp. 3d 666, 681 (E.D. Tex. 2019) ("[Plaintiff] made the business decision to continue participating in Medicare, and after more than two years, it cannot require this Court to redress its business decision by threatening imminent

bankruptcy."). Nor do APS's actions support its claims of imminent insolvency: APS does not deny that when APS sold its podiatry division in August 2024, it used the proceeds to make multi-million dollar distributions to its owners, rather than use those funds to support its supposedly struggling operations or to forestall its closure. Pl.'s Reply & Resp. Br., Doc. No. 27, at 38-39.

Even if APS had adequately substantiated its financial condition, the cases it relies on for the application of the preclusion of judicial review exception are inapposite. APS cites *Pathfinder Healthcare, Inc. v. Thompson*, 177 F. Supp. 2d 895 (E.D. Ark. 2001), and *Frontier Health Inc. v. Shalala*, 113 F. Supp. 2d 1192 (E.D. Tenn. 2000), but those involved the *permanent* termination of Medicare and Medicaid provider agreements (not the *temporary* suspension of Medicare payments) and more seriously impacted the plaintiffs' business. For example, *Pathfinder* involved a loss of over 95% of the provider's funding. *See* Br. Supp. Mot. for TRO & Prelim. Inj., No. 5:01CV00384 JMM, Doc. No. 4, 2001 WL 34871022. By contrast, APS asserts it receives approximately 30-40% of its revenue from federal healthcare programs. Hannah Decl., Pl.'s Mot., Doc. No. 9-1, ¶ 7. Because APS has not shown that it will be unable to obtain judicial review of any overpayment determination, this "very narrow, and rarely applied" exception does not apply. *Timberlawn Mental Health Sys. v. Burwell*, No. 3:15-CV-2556-M, 2015 WL 4868842, at *3 (N.D. Tex. Aug. 13, 2015).

*Second*, APS has failed to demonstrate that the collateral claim exception applies, as APS has not (a) raised a colorable constitutional claim collateral to its substantive claim of entitlement, (b) shown that irreparable harm would result from exhaustion, or (c) shown that the purposes of exhaustion would not be served by requiring further administrative procedures. *Anderson v. Sullivan*, 959 F.2d 690, 693 (8th Cir. 1992). On the first prong, *Clarinda* rejected the

same argument based on reasoning equally applicable here: APS cannot assert a colorable constitutional challenge to the temporary Medicare payment suspension because "it is not a violation of due process to temporarily withhold Medicare payments during an ongoing investigation for acts of fraud." *Clarinda*, 100 F.3d at 531. As explained above, APS's efforts to distinguish this action from *Clarinda* are baseless. Nor is APS's claim "collateral" since awarding APS the relief it requests "would be tantamount to deciding the merits of its claim for benefits, and doing so would unquestionably interfere with HHS' administrative review process." *Hollywood Home Health Servs., Inc. v. Qlarant Quality Sols., Inc.*, Case No. CV 19-6817-DMG, 2020 WL 3964792, at *5 (C.D. Cal. Feb. 27, 2020); *see also Heckler*, 466 U.S. at 614 (challenge not collateral when it is "at bottom, a claim that [the plaintiff] should be paid").

On the second prong of the collateral claim exception, APS asks the Court to assume that APS will suffer irreparable harm based solely on conclusory allegations submitted in two declarations from its CEO, Kevin Hannah, and one from its Director of Finance, Brandon Crain. As explained above, *see supra* at 6-8, and in Defendants' Opening Brief, *see* Defs.' Br., Doc. No. 23, at 27-29, these declarations are insufficient to demonstrate irreparable harm.

On the third prong, the administrative scheme permits both a temporary payment suspension for the duration of an investigation into credible allegations of fraud, 42 C.F.R. § 405.371(a)(2), and an administrative process once that investigation concludes, 42 U.S.C. § 1395ff(b)(1)(A) (incorporating judicial review provision of the Social Security Act, 42 U.S.C. § 405(g)); 42 C.F.R. § 405.904(a)(2) (describing administrative appeals process). It thus reflects the balance struck by Congress between the potential for hardship caused by administrative delays and the downside of premature judicial intervention in the regulatory process.

*Third*, mandamus does not supply the Court with jurisdiction, as APS cannot establish (a) a clear and indisputable right to the relief sought, (b) that Defendants have a nondiscretionary duty to honor that right, or (c) that APS has no other adequate remedy. *Castillo v. Ridge*, 445 F.3d 1057, 1060-61 (8th Cir. 2006). On the first prong, APS ignores the plain language of the applicable regulations, which makes evident that APS has no right to the relief sought. *See* 42 C.F.R. § 405.372(c)(2)(ii) ("The rescission of the suspension and the issuance of a final overpayment determination to the provider or supplier may be delayed until resolution of the investigation."); *see also Naushad v. U.S. Dep't. of Health & Human Servs.*, No. 4:20-CV-00018, 2020 WL 2800381, at *4 (E.D. Mo. May 29, 2020) ("CMS has no obligation under 42 C.F.R. § 405.372(c)(2) to make any final determinations or lift the suspension before the investigation of [a provider] is resolved, which includes the pendency of a civil or criminal action."). APS argues that it has a right to an overpayment determination but fails to explain why it is entitled to mandamus relief for an overpayment determination *now*. Again, APS is attempting to jump the gun and short-circuit the government's fraud investigation and the CMS administrative process with no legal basis for doing so.

On the second prong, even if APS had a clear and indisputable right to the relief sought, APS cannot demonstrate that Defendants have a nondiscretionary duty to honor that right where "the decision to suspend payment or to continue a payment suspension is made at the sole discretion of CMS." *Naushad*, 2020 WL 2800381, at *4; *Integrated Nursing & Health Servs. Inc. v. CMS*, No. 17-683, 2017 WL 1373265, at *3 (D. Minn. Apr. 13, 2017); *see also* 42 C.F.R. § 405.371 (providing CMS "may" suspend payments and "may" decide not to suspend payments for "good cause"). APS argues that the government must issue an overpayment determination but

10

cannot explain why the government must do so now, amid an ongoing investigation into APS that could inform the basis and amount of any such determination.

On the third prong, APS has another adequate remedy available: administrative relief. 42 C.F.R. § 405.904(a)(2) (describing four-step administrative review); *see also Clarinda*, 100 F.3d at 530-31. A delay in review while the government completes its investigation does not amount to denial of review. *See, e.g.*, *MedPro Health Providers*, 2017 WL 4699239, at *5 (declining to "upset the balance Congress chose to strike between the competing considerations of individual hardship and systemic efficiency").

**II.    APS Failed to Plead a Claim to Relief.**

As outlined in Defendants' Opening Brief, *see* Defs.' Br., Doc. No. 23, at 19-24, the Court should also dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6) because APS failed to plead any claim for relief. <u>First</u>, Counts III and IV fail because APS has not pled that CMS acted beyond the authority granted to it by Congress or regulation. *See* 42 U.S.C. § 1395y(o); 42 C.F.R. Part 405, Subpart C; *Mandan, Hidatsa & Arikara Nation v. U.S. Dep't of the Interior*, 95 F.4th 573, 581 (8th Cir. 2024) (explaining that for an agency action to be "arbitrary and capricious, the agency must have failed to rely on the relevant factors, failed to consider an important aspect of the problem, or otherwise not engaged in reasoned decisionmaking in a manner not supportable by a rational basis"); *see also Fla. v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1287 (11th Cir. 2021). Grasping to identify a violation of regulation, APS claims that Defendants (1) failed to comply with a regulation requiring a response to APS's rebuttal within 15 days, *see* Compl., Doc. No. 1, ¶¶ 28, 74; (2) have taken no steps to investigate APS, *see id.* ¶¶ 18, 30-34, 75; and (3) have not taken steps to issue an overpayment determination, *see id.* ¶¶ 29, 76. APS has not only failed to identify how the government acted improperly but also

cannot connect its allegations about the government's conduct to any entitlement to relief. For example, much of APS's Complaint turns on its assertion that the government did not respond quickly enough to APS's rebuttal submission. As the government has explained, that assertion is incorrect. Defs.' Br., Doc. No. 23, at 20-22. Besides, APS has not even attempted to articulate a theory for how the alleged delay in response would warrant the relief it seeks (*i.e.*, termination of the underlying suspension). As for the other two allegations, as explained in Part I, *supra*, APS's assertions are implausible on their face. *See also id.*

*Second*, Counts I and V fail because APS has not pled any colorable constitutional claim, as explained above. *See also id.* at 22-24. In its response, APS repeats verbatim large swaths from its Motion for Injunctive Relief and cites a string of Medicare *recoupment* cases to substantiate its due process claim. *See* Pl.'s Reply & Resp. Br., Doc. No. 27, at 20. But this is not a recoupment case. APS challenges a temporary payment suspension and concedes that CMS has not issued an overpayment determination or taken any recoupment actions. Even if a provider has a due process interest at the recoupment stage, this fact does not support the logical leap APS seeks to make that there exists an actionable procedural due process claim when Medicare payments are temporarily suspended during an ongoing fraud investigation. APS said it best in its response brief: "there is no constitutionally protected interest in funds that are *temporarily* withheld during an *active* CMS fraud investigation." *Id.*

*Third*, Count II fails because APS cannot establish a clear and indisputable right to the relief sought, that the defendants have a nondiscretionary duty to honor that right, or that APS has no other adequate remedy. *See Castillo*, 445 F.3d at 1060-61; *see also* Defs.' Br., Doc. No. 23, at 24. The Court should deny APS's efforts to evade the Congressionally-authorized

administrative process and undermine an active, ongoing fraud investigation into APS's Medicare billing practices.

### III. APS Has Not Met Its Burden to Establish that a Preliminary or Permanent Injunction is Warranted.

As in *Clarinda*, this Court should decline to consider APS's motion for preliminary or permanent injunction because the Court lacks subject matter jurisdiction. *See Clarinda*, 100 F.3d at 531. Even if the Court does not dismiss, the Court should deny APS's motion because APS cannot establish that such extraordinary relief is warranted. *Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694, 699 (8th Cir. 2021) ("A preliminary injunction is an extraordinary remedy, and the burden of establishing the propriety of an injunction is on the movant." (internal quotation marks omitted)). As explained in Defendants' Opening Brief and in Parts I and II, *supra*, APS cannot show that it has any chance—fair or likely—on succeeding on the merits of any of its claims. APS also cannot establish irreparable harm.

As explained above, *see supra* at 6-8, APS's vague and speculative assertions about its financial condition are inadequate. Likewise, APS offers a speculative argument unsupported by any facts whatsoever that its Medicare beneficiaries will lose access to its services. *See* Pl.'s Reply & Resp. Br., Doc. No. 27, at 39. Rather, APS cites *Family Rehab., Inc. v. Azar*, 886 F.3d 496 (5th Cir 2018), a recoupment case in which the plaintiff provided evidence that 280 home health patients would be impacted because Medicare payments accounted for 88-94% of its business. *See id.* at 499. By contrast, APS simply states, without offering any evidence, that federal payors make up approximately 30-40% of its revenue. Hannah Decl., Pl.'s Mot., Doc. No. 9-1, ¶ 7; *cf. True Health Diagnostics, LLC v. Azar,* 392 F. Supp. 3d 666, 681 (E.D. Tex. 2019) (rejecting identical argument where Medicare payments "only make up 30%" of plaintiff's revenue and explaining that there is "less disruption to Medicare patients" for a "diagnostics

13

laboratory, usually performing tests in an early stage of disease progression"); *Padda*, 37 F.4th at 1384-85 (denying injunction and finding no irreparable harm where Medicare payments comprised 33% of practice revenue). APS also does not explain why its customers, who largely ship specimens by mail to APS from across the country, would be unable to mail their specimens to a different lab.

In addition, APS downplays the risk that the government will not be made whole if the suspended funds are returned to APS. APS does not deny that it has a history of making multi-million dollar distributions to its owners, nor does APS deny that if it receives the currently suspended funds, it may do the same thing with them. Instead, APS says both that (1) the "only way that funds would not be available for future collection is if APS somehow had insufficient assets to return any funds obtained by fraud," and (2) it has no money and is on the brink of insolvency. Pl.'s Reply & Resp. Br., Doc. No. 27, at 40. In other words, APS concedes that this case involves the exact circumstances under which APS admits that the government would be unable to recover any released funds. For these same reasons, the public interest and balance of the equities weigh heavily against issuing an injunction.

## CONCLUSION

For the reasons set forth in Defendants' Opening Brief, the Court should dismiss this action with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, or alternatively, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to plead a claim to relief. If the Court does consider APS's motion for a preliminary and permanent injunction, the Court should deny the motion.

Respectfully submitted,

JONATHAN D. ROSS
United States Attorney
Eastern District of Arkansas

/s/     *Jamie Goss Dempsey*
_____
Jamie Goss Dempsey
Ark. Bar No. 2007239
Assistant U. S. Attorney
425 West Capitol Ave., Suite 500
Little Rock, Arkansas 72201
Tel.    (501) 340-2600
jamie.dempsey@usdoj.gov

## **CERTIFICATE OF SERVICE**

This will certify that a true and correct copy of the foregoing was filed with the Court *via* CM/ECF, which shall send notification to counsel of record.

/s/   *Jamie Goss Dempsey*
_____
Jamie Goss Dempsey