UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| ADVANCED PATHOLOGY SOLUTIONS, PLLC, | : <br> : Case No. 4:25-cv-229-JM <br> : |
| *Plaintiff*, | : <br> : |
| v. | : <br> : |
| ROBERT F. KENNEDY, in his official capacity as Secretary for the United States Department of Health & Human Services, | : <br> : <br> : <br> : |
| and | : <br> : |
| STEPHANIE CARLTON, in her official capacity as Acting Administrator of the Centers for Medicare and Medicaid Services, | : <br> : <br> : <br> : <br> : |
| *Defendants*. | : |

**PLAINTIFF'S STATUS REPORT**

## **INTRODUCTION**

On September 19, 2025, at the initial injunction hearing, this Court warned the Government "you got *four months to figure it out*." Tr. Mot. Hrg. 19:14–19:15, ECF No. 39. Four months later, the Government has refused to heed the Court's warning. It has done nothing. Instead, the Government has maintained its indefinite, unconstitutional suspension of payments from the Centers for Medicare & Medicaid Services ("CMS") to Advanced Pathology Solutions, PLLC ("APS"), without issuing an overpayment determination, without bringing claims of any kind against APS, and without any explanation of the basis for the suspension, the evidence purportedly supporting it, or when it will end. Due process requires that the Court end the Government's unconstitutional deprivation of APS's property rights, enjoin the Government's suspension of CMS payments, and return to APS the funds that the Government has illegally withheld.

APS will soon be forced out of business if the Government is permitted to continue its unconstitutional and total suspension of CMS payments. The suspension has already forced APS to curtail its operations dramatically, terminate more than half its employees, cease operating Medicare-dependent lines of business, and raise alternative funds to stay in business. APS cannot endure the extraordinary burden imposed by the Government's misconduct. If due process means anything, it means the Government must not be permitted to shutter a business by taking its property without explanation and without any opportunity to challenge the taking.

APS is entitled to a preliminary and a permanent injunction. First, APS has already experienced irreparable harm because Defendants have deprived it of its property without due process of law. Second, on the merits, APS easily satisfies the fair-chance-of-success standard for a preliminary injunction and also satisfies the actual-success standard for a permanent injunction. Finally, the public interest and equities weigh heavily in APS's favor.

1

For these reasons, and those discussed below, Plaintiff respectfully requests that this Court issue an injunction, ordering Defendants to lift the suspension of (and release) its CMS payments.

## ARGUMENT

**1.     The Government's Unconstitutional and Indefinite Payment Suspension Continues With No End in Sight.**

Aside from APS's worsening circumstances, nothing has materially changed in the four months since the Court's initial injunction hearing. CMS has continued to withhold all payments to APS without issuing an overpayment determination, without taking any investigatory steps, without providing APS any explanation for the suspension, and without any material investigation occurring. Nor has the Department of Justice ("DOJ") materially advanced its investigation or asserted any claims against APS. Meanwhile, APS continues to suffer a complete deprivation of its due process rights.

Since the Court's hearing in September, CMS has done nothing. Most importantly, CMS has not issued an overpayment determination. But even beyond that failure to act, APS has not received any subpoenas, requests for records, requests for interviews, or any other investigatory requests from CMS. CMS has not requested claims data or medical records from APS. Nor has CMS indicated that it intends to issue an overpayment determination or comply with clear regulatory requirements for maintaining its payment suspension. It just willfully refuses to act in the face of this Court's unequivocal warning.

To the extent the Government relies upon the DOJ's investigation of *qui tam* matters pending in this District to justify the suspension, that investigation has not materially advanced in

2

the past four months either.[1] That investigation has now gone on for more than 3.5 years, under seal, and without any claims asserted against APS by the Government.

The past four months have solidified APS's entitlement to relief. Even when warned by the Court, the Government has been unable or unwilling to issue an overpayment determination or assert any claims whatsoever against APS. By refusing to make any progress whatsoever in its investigation or assert any claims, the Government has made clear that its payment suspension is indefinite. Because the suspension is not temporary or in service of a prompt overpayment determination, it has been, and continues to be, illegal and unconstitutional.

### 2.    Plaintiff Will Be Irreparably Harmed Without an Injunction.

Without an injunction, APS will suffer three separate and independent irreparable harms: (1) deprivation of its constitutional rights; (2) extinction; and (3) the loss of services to Medicare beneficiaries, particularly in rural areas.

To reiterate, the "denial of a constitutional right" is an "irreparable harm." *Ng v. Bd. of Regents*, 64 F.4th 992, 998 (8th Cir. 2023) (citation omitted); *see also Simms v. District of Columbia*, 872 F. Supp. 2d 90, 105 (D.D.C. 2012) (collecting cases and holding that depriving plaintiff of his property "for over a year" without "any type of hearing" is a "deprivation of plaintiff's constitutional rights," which "constitutes irreparable harm"). There is no question that if the Government's suspension of CMS payments is determined to be indefinite, it is therefore a

---

[1] The DOJ issued Civil Investigative Demands in November 2025 requesting information related to APS's relationship with one gastroenterology practice. But DOJ has known about that relationship (which ended in 2021) for more than two years, and aside from the inexcusable delay, the narrow subject matter of these Demands would be obviously insufficient to justify a complete payment suspension. The timing and topics of these Demands strongly indicate they are pretext—issued not for a legitimate investigatory purpose, but to provide a basis for the Government to tell the Court it is "still investigating." Notably, APS promptly provided the information requested in these Demands and has not heard from the Government in over a month. APS explained the pretextual nature of these Demands in correspondence to the Court overseeing the *qui tam* matters and will have that correspondence available at the hearing on January 22. APS has not attached that correspondence here because those *qui tam* matters remain under seal.

3

deprivation of APS's property interest in those funds without due process. The Government does not seriously argue otherwise.

Without an injunction, APS will almost certainly be forced out of business. The Defendants have withheld over **$13,000,000.00** (and counting) in CMS payments to APS for work already performed. To stay afloat, APS has already been forced to eliminate lines of business, reduce staff, abandon strategic growth plans, and incur the costs (without compensation for 18 months) of performing services for Medicare beneficiaries to keep its relationships with its customers. This is unsustainable. APS is now on the brink of collapse and will almost certainly need to cease operating unless the Court issues an injunction.

> **3. Time Has Proven What APS Said From the Start: The Government Has Indefinitely Suspended APS's CMS Payments in Violation of the Due Process Clause and Federal Regulations.**

Faithful to binding precedent, APS has never disputed that the Government may *temporarily* withhold funds during an *active* fraud investigation. *See, e.g.*, *Clarinda Home Health v. Shalala*, 100 F.3d 526, 531 (8th Cir. 1996) ("[I]t is not a violation of due process to *temporarily* withhold Medicare payments during an *ongoing investigation* for acts of fraud." (emphasis added)). But time has proven that the Government's investigation is not temporary—it is indefinite. Even to this day, the Government has failed provide the Court with *any* factual basis at all to support a finding that its 18-month-long investigation is temporary. Thus, *Clarinda* plainly does not apply here.² Having chosen to rest its arguments on illusory jurisdictional defects and

---

² APS respectfully continues to disagree that 42 C.F.R. § 405.371(b)(3) sets an 18-month period during which a suspension is temporary as a matter of law. Section § 405.371(b)(2) requires the Government to evaluate whether good cause exists to continue the suspension every 180 days, and § 405.371(b)(3) states that good cause to continue to suspend payments *must be deemed not to exist* if a payment suspension has been in effect for 18 months. Reading the regulations as a whole, the best interpretation is that a suspension is indefinite as a matter of law after the 18-month mark, not that it is temporary as a matter of law until then. (cont. on next page)

4

case law that applies only to temporary suspensions, the Government does not seriously contest that (1) APS has a protected property interest in CMS payments that have been indefinitely withheld, and (2) the Government has deprived APS of those payments without due process of law.

Not only has the suspension here festered for 18 months, but Defendants have also violated federal regulations along the way. "Every 180 days after the initiation of a suspension of payments . . . CMS will— (i) Evaluate whether there is good cause to not continue such suspension under this section; and (ii) Request a certification from . . . [a] law enforcement agency that the matter continues to be under investigation warranting continuation of the suspension." 42 C.F.R. § 405.371(b)(2). The first 180-day period after the suspension concluded on January 22, 2025. Shortly thereafter, on January 24, 2025, the Government sent a Payment Suspension Extension Notice ("180-day Notice"), informing APS that it had "(1) evaluated whether there is good cause to not continue the payment suspension and (2) received a certification . . . that the matter continues to be under investigation." Pl.'s Mot. Prelim. & Permanent Inj. Ex. 4, at 2, ECF No. 9-5. The 180-day Notice also stated that it was sent "[c]onsistent with 42 C.F.R. § 405.371(b)." *Id*.

The second 180-day period of suspension concluded on July 21, 2025, and the third 180-day period of suspension will conclude on January 17, 2026. Yet to date, APS has not received a second or third 180-day notice, the suspension continues without any indication that CMS is

---

APS has reviewed the briefing in *Clarinda*. The parties did not brief § 405.371(b)(3), nor did they brief whether the suspension in that case was temporary or indefinite. That is not surprising—the District Court denied injunctive relief *only a few months* after the suspension began, and the suspension was still less than a year old when the Eighth Circuit issued its opinion. *See Clarinda*, 100 F.3d at 527 (noting that Clarinda Home Health received notice of the suspension in December 1995). In those circumstances, there was no need for the Eighth Circuit to weigh in on when a suspension becomes indefinite, let alone implicitly rely on a statutory provision that the parties never briefed.

5

actually investigating or moving toward an overpayment determination, and with each passing day, APS is closer to insolvency.

**4.     Remedies**

Plaintiff respectfully requests that the Court order Defendants to release all of Plaintiff's seized property immediately—*i.e.*, all funds withheld since the day the suspension was imposed. To reiterate, Defendants have withheld *all* of APS's Medicare payments, totaling over $13 million, for 18 months without determining whether five claims, apparently worth less than $1,400, were derived from unnecessary procedures.  All of the funds have been withheld illegally, so the only remedy that will make Plaintiff whole is restoring those funds by ordering Defendants to release them in full. *See Peterson v. Weinberger*, 508 F.2d 45, 50 (5th Cir. 1975) (noting that "the district court, by preliminary injunction, ordered the withheld funds paid to Dr. Peterson upon his posting of a bond to indemnify the Government should the claims indeed prove false"); *cf. In re THG Holdings LLC*, No. 19-cv-11689, 2020 WL 1493622, at *2 (D. Del. Mar. 27, 2020) (recounting that after finding CMS was withholding payments in violation of federal law, the Bankruptcy Court ordered HHS and CMS "to continue making Medicare payments owed to [plaintiff]" and "deliver all Medicare payments withheld . . . to [plaintiff] within five business days").

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court issue an injunction, ordering Defendants to release Plaintiff's seized property immediately.

COZEN O'CONNOR

Dated: January 16, 2026

By: */s/ Dustin McDaniel*
Dustin McDaniel
Bar No. 99011
*Attorney for Plaintiff,*
*Advanced Pathology Solutions, PLLC*
Cozen O'Connor

6

1307 W. 4th Street
Little Rock, Arkansas 72201
Tel: (501) 404-4010
E-mail: dmcdaniel@cozen.com

Arthur P. Fritzinger
Penn. Bar No. 309533
*Admitted pro hac vice*
*Attorney for Plaintiff,*
*Advanced Pathology Solutions, PLLC*
Cozen O'Connor
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
Tel: (215) 665-7264
E-mail: afritzinger@cozen.com

Emily J. Yu
D.C. Bar No. 1672461, Ark. Bar No. 2020155
*Attorney for Plaintiff,*
*Advanced Pathology Solutions, PLLC*
Cozen O'Connor
2001 M St. NW, Ste. 500
Washington, D.C. 20036
Tel: (202) 280-6509
E-mail: eyu@cozen.com