**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

|  |  |  |
|---|---|---|
| ADVANCED PATHOLOGY SOLUTIONS, PLLC, | : | |
| | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | Case No. 4:25-cv-229-DPM |
| | : | |
| ROBERT F. KENNEDY, in his Official Capacity as Secretary for the United States Department of Health & Human Services, | : | |
| | : | |
| and | : | |
| | : | |
| DR. MEHMET OZ, in his Official Capacity as Administrator of the Centers for Medicare and Medicaid Services, | : | |
| | : | |
| *Defendants*. | : | |

**PLAINTIFF'S SUPPLEMENTAL BRIEF**

Plaintiff Advanced Pathology Solutions, PLLC ("APS"), through undersigned counsel, files a Supplemental Brief pursuant to the Court's Order dated March 13, 2026 (ECF No. 55).

**INTRODUCTION**

For nearly two years, Defendants have abused the carefully constrained suspension power afforded to them by Congress, in contravention of regulatory and constitutional limits, ███████ ███████████████████████████████. When challenged, Defendants have boldly and consistently replied that they are beyond reproach and above the law: no court has power over their conduct as long as they maintain the suspension and do not issue an overpayment determination. More importantly, Defendants refuse to do what the U.S. Constitution and federal regulations both require: conduct an investigation and issue an overpayment determination. Instead, Defendants have suspended *all* Medicare payments to APS—regardless of whether they have any connection

1

to the alleged conduct at issue—and have conducted no investigation or done anything to reach an overpayment determination.

It has been clear since APS filed suit that Defendants' suspension of all Medicare payments to APS was indefinite, not in service of any overpayment determination, and therefore contrary to federal regulatory and constitutional requirements. Defendants have never issued administrative subpoenas, requested medical records, conducted interviews, or otherwise conducted any investigation. Nor have Defendants provided any indication of when, if ever, they might issue an overpayment determination. Instead, Defendants have baldly claimed their conduct is beyond judicial review of any kind. To the extent Defendants have sought to justify their withholding of APS's funds at all, they have implied it is justified by ██████████████████████ ███████████████.

The Government's recent ████████████████████████████ ████████████████████████.[1] ████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████ These claims simply have no relation whatsoever to Defendants' payment suspension. ██████████████ ██████████████████████ ████████████████████ ████████████████████████████████████ The payment

_____

[1] ████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████

suspension has denied APS reimbursement for *all* work for *all* Medicare beneficiaries performed by APS *after* the ██████████████████████████ had ended. The earliest claim for which payment has been withheld pursuant to the suspension was in July 2024—it has now been nearly *two years* since Defendants began withholding *all* the funds unquestionably owed to APS for work it performed. ████████████████████████████

████████████████████████████████████████

████████████████████████

Defendants have never rebutted APS's claims that they are not actually investigating or working towards an overpayment determination. Instead, Defendants have baldly stated that the suspension is "temporary," asserted that they are beyond judicial oversight, and implied that the ████████████████████████████. The facts and the law have always contradicted Defendants' first two flimsy defenses, and █████████████████████████

████████████████████████████████████████.

Over the course of 20 months, Defendants have withheld millions of dollars in an effort █ ██████████████████████████. The suspension violates regulatory and constitutional requirements and is nothing more than a bad-faith attempt to ████████████████. It must end.

## ARGUMENT[2]

## I.     Time Has Proved that the Government Indefinitely Withheld APS's Payments and Will Not Issue an Overpayment Determination Absent a Court Order.

More than 20 months into the payment suspension, the Government continues to baldly assert that the suspension is "temporary" and that APS has no ability to challenge it—no matter

---

[2] For the sake of brevity, APS is not repeating its previous arguments and hereby incorporates by reference its prior briefing.

how long the suspension lasts. (ECF No. 60 at 1–2). Unsurprisingly, that is not the law. The Court has subject-matter jurisdiction under three independent exceptions to the administrative-channeling requirement, as APS previously explained at length. (ECF No. 27 at 4–19). The Government's tired refrain that APS is seeking an end-run around administrative review "blinks the procedural reality." *United States ex rel. Rahman v. Oncology Assocs., P.C.*, 201 F.3d 277, 290 (4th Cir. 1999). The "very reason" that APS has not commenced the administrative process is that CMS has *prevented* APS from commencing it by "refus[ing] to investigate, much less issue, [an] overpayment determination[]." *See id.* (affirming mandamus relief).

As time has dragged on, APS's arguments have only grown stronger. To recap, binding regulations require payment suspensions to be "temporary," 42 C.F.R. § 405.372(d)(3)(ii); unclouded by "good cause" not to continue them, *id.* § 405.371(b)(2); and in service of an "overpayment determination," *id.* § 405.372(c)(2). Good cause not to suspend payments "must be deemed to exist if a payment suspension has been in effect for 18 months and there has not been a resolution of the investigation." *Id.* § 405.371(b)(3). This case plainly falls under that rule. Where, as here, there is "good cause not to suspend payments," the Government is **_not_** authorized to suspend payments any longer, even in cases involving "fraud." *Id.* § 405.371(a)(2) (authorizing Medicare payment to be suspended in cases involving fraud "unless there is good cause not to suspend payments"); *see also* ECF No. 23 at 4–5 (relying on § 405.371(a)(2) as the source of the suspension).

Although the 18-month rule does not apply when the DOJ asks to continue the suspension by means of a "written request" that meets specific requirements, 42 C.F.R. § 405.371(b)(3)(ii), the Government has explicitly and affirmatively waived any reliance on such a request. In its reply in support of its motion for a protective order, the Government said: "The written extension request

*has not been raised in connection with any claim or defense in this action*; . . . the written extension request has nothing to do with APS's complaint, nor the pending motions to dismiss or for a preliminary injunction." (ECF No. 60 at 5 (emphasis added)). That is waiver because the Government is clearly "aware" of the written extension request and its role in the regulatory scheme yet has "deliberately" chosen not to rely on it. *See Wood v. Milyard*, 566 U.S. 463, 466, 474 (2012) (holding that materially identical circumstances amount to waiver and that courts cannot resurrect issues that have been waived). A simple chain of logic shows why that waiver is fatal: (1) § 405.371(a)(2) is the source of the suspension; (2) § 405.371(a)(2) does not authorize a suspension where "there is good cause not to suspend payments"; (3) § 405.371(b)(3) says that good cause not to suspend payments "must be deemed to exist" if a suspension has lasted more than 18 months; (4) the suspension in this case has lasted more than 18 months; and (5) the Government has waived any reliance on an exception to that 18-month rule.[3] Thus, the continued suspension of APS's payments is plainly in violation of binding regulations.

The suspension is also unconstitutional. APS has been telling the Court for over a year that this suspension is indefinite and that the Government is not actually investigating or otherwise taking steps toward issuing an overpayment determination. Defendants have *never* offered facts to dispute APS's claims. And the sheer amount of time that has elapsed since the Government suspended APS's payments in July 2024 is powerful proof that the suspension is not—and has never been—temporary. It is both telling and concerning that to this day the Government still

---

[3] To be clear, APS does not believe that the 18-month rule has jurisdictional significance. None of APS's jurisdictional arguments rely on that rule. (ECF No. 27 at 4–19). But now that the suspension has lasted for more than 18 months, APS has even stronger arguments that its claims are colorable for purposes of the collateral-claim exception (ECF No. 27 at 5–15), are plausible for purposes of defeating the Government's Rule 12(b)(6) arguments (ECF No. 27 at 19–32), and have at least a "fair chance" of prevailing for purposes of injunctive relief (ECF No. 27 at 33–36). Indeed, the indefinite nature of the suspension is at the core of APS's Complaint.

cannot say when the suspension will end.  Presumably, that is because APS's allegations are true: For nearly two years, Defendants have deprived APS of its property without due process of law and without ever investigating the conduct purportedly justifying the suspension.

For its part, the Government continues to parrot that *Clarinda Home Health v. Shalala*, 100 F.3d 526 (8th Cir. 1996), controls this case.  (ECF No. 60 at 6).  But *Clarinda* merely held that it "is not a violation of due process to *temporarily* withhold Medicare payments during an *ongoing* investigation for acts of fraud." 100 F.3d at 531 (emphasis added).  *Clarinda* did not hold that a party may never challenge a payment suspension under any circumstances before going through the administrative process.  Such a holding would have made little sense on the facts of that case. Clarinda Home Health challenged the Government's authority to impose *any* suspension without a hearing.  *See id.* at 528.  Indeed, it filed its challenge to the suspension shortly after it was imposed. After noting that 42 C.F.R. § 405.371(b) authorizes the "temporary withholding of payments," *Clarinda* couched its entire analysis and holding in terms of "temporary" suspensions. *See id.* at 529–31.  This case is not about a temporary suspension pursuant to the regulations—it is about an indefinite suspension in violation of the regulations.[4]  The Government cannot seriously dispute the scope of *Clarinda*'s holding.  The Eighth Circuit expressly said, "[W]e hold that it is not a violation of due process to *temporarily* withhold Medicare payments during an *ongoing* investigation for acts of fraud."  *Id.* at 531 (emphasis added).  It should go without saying that *Clarinda* did not greenlight the Government's ability to flagrantly violate its own binding

---

[4] APS reviewed the briefing in *Clarinda*.  There was no contention that the suspension in that case was indefinite.  APS is happy to provide the briefing to the Court upon request.  Due to the age of the case, the briefing is not available on Westlaw or Lexis.

regulations, refuse to issue an overpayment determination, take no investigatory steps, and leave providers languishing in jurisdictional limbo until their businesses can no longer survive.[5]

At bare minimum, the Government should have acknowledged that it is asking the Court to extend *Clarinda* to cover unlawful suspensions and developed an argument for why such an extension makes sense. Yet the Government has not done so, and it is not the Court's job to save the Government from the consequences of its aggressive litigation positions. *See Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*, 908 F.3d 313, 324 (8th Cir. 2018) ("[A] litigant may not advert perfunctorily to an argument, hoping that [the court] will do its work for it by developing the argument and putting flesh on its bones.").

The consequences of the Government's decision to put all of its eggs in the *Clarinda* basket, so to speak, are far reaching and make this a much easier case. The Government has never disputed that APS has a constitutionally protected interest in payments that have been indefinitely withheld, nor that APS is due more process than it has received so far.[6] Instead, the Government improperly—and in conclusory fashion—attacked APS's well-pleaded factual allegations that the suspension is indefinite (*see* ECF No. 23 at 12, 22–23), and refused to submit any evidence other than its own say-so to support its defense (ECF No. 22-1 at 2 (asserting in conclusory fashion that the investigation into APS is "active and ongoing" without providing any corroborating details

---

[5] Judge Beam was one of the members of the panel in *Clarinda*. A decade earlier, he authored *Krebsbach v. Heckler*, which held that the Government "may temporarily suspend payments in order to conduct an investigation when confronted with reliable evidence of fraud" but "[s]uch a suspension cannot continue indefinitely." 617 F. Supp. 548, 551 (D. Neb. 1985).

[6] Nor has the Government disputed that the "denial of a constitutional right" is an "irreparable harm." *Ng v. Bd. of Regents*, 64 F.4th 992, 998 (8th Cir. 2023) (citation omitted); *see also Simms v. District of Columbia*, 872 F. Supp. 2d 90, 105 (D.D.C. 2012) (collecting cases and holding that depriving plaintiff of his property "for over a year" without "any type of hearing" is a "deprivation of plaintiff's constitutional rights," which "constitutes irreparable harm").

7

about the investigation or when it will end)).  Even after more than a year of litigation, the Government has still failed to provide the Court with any factual basis in the record to support a finding that the suspension is temporary, leaving APS's well-pleaded allegations (and supporting declarations, ECF Nos. 9-1, 9-6, 27-1, 41-1) unrebutted.

**II.** ███████████████████████████████████████████████
███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████    ███████████████

██████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

10

**CONCLUSION**

For the foregoing reasons, APS respectfully requests that this Court issue an injunction ordering the Government to release APS's property immediately and to issue an overpayment determination so that, if necessary, APS can commence the administrative review process.

COZEN O'CONNOR

Dated: April 10, 2026

By: */s/ Dustin McDaniel*
Dustin McDaniel
Bar No. 99011
*Attorney for Plaintiff,*
*Advanced Pathology Solutions, PLLC*
Cozen O'Connor
1307 W. 4th Street
Little Rock, Arkansas 72201
Tel: (501) 404-4010
E-mail: dmcdaniel@cozen.com

Arthur P. Fritzinger
Penn. Bar No. 309533
*Admitted pro hac vice*
*Attorney for Plaintiff,*
*Advanced Pathology Solutions, PLLC*
Cozen O'Connor
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
Tel: (215) 665-7264
E-mail: afritzinger@cozen.com

Emily J. Yu
D.C. Bar No. 1672461
Ark. Bar No. 2020155 (currently inactive)
*Admitted to E.D. Ark.*
*Attorney for Plaintiff,*
*Advanced Pathology Solutions, PLLC*
Cozen O'Connor
2001 M St. NW, Ste. 500
Washington, D.C. 20036
Tel: (202) 280-6509
E-mail: eyu@cozen.com

11

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that a true and correct copy of the foregoing was filed with the Court via CM/ECF, which shall send notification to counsel of record.

Dated: April 10, 2026

*/s/ Dustin McDaniel*
Dustin McDaniel
