**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

| | |
|---|---|
| **ADVANCED PATHOLOGY SOLUTIONS, PLLC** | **PLAINTIFF** |
| **v.** | **No. 4:25-CV-229 DPM** |
| **ROBERT F. KENNEDY, in his official capacity as Secretary of the United States Department of Health & Human Services; and DR. MEHMET OZ, in his official capacity as Administrator of the Centers for Medicare and Medicaid Services** | **DEFENDANTS** |

## DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS AND RESPONSE TO MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION

Controlling Eighth Circuit precedent compels dismissal of this action because the court lacks subject matter jurisdiction to hear this challenge by Advanced Pathology Solutions ("APS") to the temporary Medicare payment suspension imposed by the Centers for Medicare and Medicaid Services ("CMS"). *See Clarinda Home Health v. Shalala*, 100 F.3d 526 (8th Cir. 1996). Here, as in *Clarinda*, CMS temporarily suspended payments to APS based on credible allegations of fraud. As the Eighth Circuit has affirmed, such action is not an appealable final determination, and no exception to the exhaustion requirement applies. As a result, this case must be dismissed under Fed. R. Civ. P. 12(b)(1) because the Court lacks subject matter to hear APS's claim. Likewise, because "it is not a violation of due process to temporarily withhold Medicare payments during an ongoing investigation for acts of fraud," *Clarinda*, 100 F.3d at 531, APS has failed to state any claim for relief and dismissal is also proper under Fed. R. Civ. P. 12(b)(6).

Because the Court lacks subject matter jurisdiction, it also must deny the injunctive relief APS seeks as the district court did in *Clarinda*. Even if the Court finds subject matter jurisdiction, APS has not established any entitlement to injunctive relief. In short, APS cannot make an end run around Medicare regulations to have funds released to it while the Government is actively pursuing the company for committing fraud.

## I.   BACKGROUND

### A. Medicare Framework

The Medicare program pays for covered medical items and services provided to eligible beneficiaries. 42 U.S.C. §§ 1395, *et seq*. A provider's participation in the Medicare program is voluntary. *See* 42 C.F.R. § 489.10. The Department of Health and Human Services ("HHS") operates Medicare through CMS, which hires contractors to perform administrative functions on behalf of CMS. 42 U.S.C. § 1395u.

"Medicare is a pay-first system. That is, once a Medicare provider submits claims for payment—without any records, documents, or proof that the services were provided or that the services meet Medicare requirements—CMS, through its contractors, automatically pays those claims within a couple of weeks of submission." *True Health Diagnostics, LLC v. Azar*, 392 F. Supp. 3d 656, 660 (E.D. Tex. 2019). Congress gave CMS broad authority to regulate Medicare reimbursement and to prevent fraud, waste, and abuse. 42 U.S.C. §§ 1395hh(a)(1), 1395ddd. One tool that CMS and its program integrity contractors use to protect Medicare funds is a temporary payment suspension. 42 U.S.C. § 1395y(o); 42 C.F.R. §§ 405.370-405.375. CMS's temporary suspension of payments to APS based on credible allegations of fraud was implemented pursuant to administrative procedure intended to protect the federal fisc from additional losses while the government investigates the potential misconduct. *See* 42 U.S.C. § 1395y(o); 42 C.F.R.

2

§§ 405.370-405.375; *Clarinda Home Health v. Shalala*, 100 F.3d 526, 529 (8th Cir. 1996) (noting that the temporary withholding of payments is "a provision designed to protect the government from suffering greater losses").

Specifically, CMS is authorized to impose a temporary payment suspension if it or one of its program integrity contractors determines that a "credible allegation of fraud exists against a provider or supplier." 42 C.F.R. § 405.371(a)(2); *see also* 42 U.S.C. § 1395y(o)(1); 42 C.F.R. § 405.370. A "credible allegation of fraud" is "an allegation from any source, including . . . civil false claims cases, and law enforcement investigations." 42 C.F.R. § 405.370(a). In determining whether there is a credible allegation of fraud, CMS consults with the Office of Inspector General of HHS ("OIG"), 42 U.S.C. § 1395y(o)(2), and "as appropriate," the Department of Justice ("DOJ"), 42 C.F.R. § 405.371(a)(2). However, authority over a Medicare payment suspension rests at all times with CMS, which is "the real party in interest" and "responsible" for the payment suspension. *See* 42 C.F.R. § 405.372(a)(4).

CMS is not required to issue notice to the provider prior to implementing a payment suspension based on credible allegations of fraud. *Id.* § 405.372(a)(4). If a payment suspension is put into effect without prior notice, the Medicare contractor must give the provider an opportunity to submit a rebuttal statement as to why the suspension should be removed. *Id.* § 405.372(b)(2). After receiving a rebuttal statement, CMS or its contractor "must within 15 days, from the date the statement is received, *consider* the statement (including any pertinent evidence submitted), together with any other material bearing upon the case, and determine whether the facts justify the suspension." *Id.* § 405.375(a) (emphasis added). Subsequently, the contractor must send written notice of its determination to the provider; however, the determination is "not an initial determination and is not appealable." *Id.* § 405.375(b), (c).

Every 180 days, CMS reevaluates the suspension and requests a certification from the OIG (or other law enforcement agency, if applicable) that the suspended provider remains under investigation. *Id.* § 405.371(b)(2). When a law enforcement agency is investigating the billing conduct of the healthcare provider, CMS can continue the suspension until resolution of the law enforcement investigation. *Id.* § 405.372(d)(3). "An investigation of credible allegations of fraud will be considered resolved when legal action is terminated by settlement, judgment, or dismissal, or when the case is closed or dropped because of insufficient evidence to support the allegations of fraud." *Id.* § 405.370(a). After a suspension has been in place for 18 months in cases of suspected fraud, CMS will lift the suspension *unless* the case has been referred to the HHS Office of Inspector General for administrative action or "[t]he Department of Justice submits a written request to CMS that the suspension of payments be continued based on the ongoing investigation and anticipated filing of criminal or civil action or both." 42 C.F.R. § 405.371(b)(3)(i)-(ii).[1] The regulations provide that all suspensions of payments will be temporary and "will not continue after the resolution of an investigation, unless a suspension is warranted because of reliable evidence of an overpayment or that the payments to be made may not be correct . . . ." 42 C.F.R. § 405.372(d)(3)(2).

---

[1] The Court previously ordered the United States to file a copy of its correspondence with CMS seeking an extension of the payment suspension under 42 C.F.R. § 405.371(b)(3)(ii) along with this filing, *see* Doc. No. 55. The United States filed a motion asserting certain privileges over the document and sought a protective order, which APS opposed. Doc. Nos. 56 (Motion), 59 (Response), 60 (Reply). The United States also filed a copy of the written extension request with the Court *in camera* and under seal. Doc. No. 58. The Court has not yet ruled on the pending motion. In order to protect its privilege assertions, Defendants are not filing a copy of the correspondence on the public docket at this time. If the Court denies Defendants' motion and directs Defendants to publicly file a copy of the written extension request, they will promptly do so.

During the suspension, CMS processes and holds payment for claims submitted by the healthcare provider. *See True Health Diagnostics, LLC v. Azar*, 392 F. Supp. 3d 666, 677 (E.D. Tex. 2019) (explaining payment is "effectively held in escrow, until the investigation is completed"). When a payment suspension terminates, any suspended funds are first applied to reduce or eliminate any obligation, including overpayment debts, owed by the provider to CMS or HHS. 42 C.F.R. § 405.372(e). If CMS issues an overpayment determination, the Medicare Act entitles the provider to a four-part review process culminating in judicial review. 42 U.S.C. § 1395ff(b)(1)(A) (incorporating judicial review provision of the Social Security Act, 42 U.S.C. § 405(g)); 42 C.F.R. § 405.904(a)(2) (describing administrative appeals process). "In the absence of a legal requirement that the excess be paid to another entity, the excess is released to the provider or supplier." 42 C.F.R. § 405.372(e).

## B. Facts

Pursuant to federal regulations, CMS implemented a temporary payment suspension of Advanced Pathology Solutions, PLLC ("APS") effective July 26, 2024 based on credible allegations of fraud. *See* 42 C.F.R. § 405.371(a)(2). Qlarant, UPIC Administrator for CMS, alerted APS to the temporary payment suspension by letter on August 8, 2024. *See* Suspension Notice, Exhibit 1 to Plaintiff's Motion for Preliminary Injunction, Doc. No. 9-2. The Suspension Notice provided the definition of credible allegations of fraud under the regulations, which is "an allegation from any source, including, but not limited to, fraud hotline complaints verified by further evidence, claims data mining, patterns identified through audits, civil false claims cases, and law enforcement investigations." *Id.* (citing 42 C.F.R. § 405.370(a)). "Allegations are considered credible when they have indicia of reliability." *Id.* The Suspension Notice also advised that the suspension may last until resolution of the investigation and may be extended under certain

circumstances. *Id.* (citing 42 C.F.R. §§ 405.370, 405.372(d)(3)). The Suspension Notice outlined the following as the basis for the suspension:

> Specifically, the suspension of Medicare payments to [APS] is based on, but not limited to, information that you misrepresented services billed to the Medicare program. More particularly, [APS] is billing for medically unnecessary services. Additionally, APS has entered into arrangements to set up mini labs or "Lean Labs" at a reduced cost in numerous healthcare providers' officers in order to increase the amount of referrals to APS.

*Id.* The Suspension Notice identified a list of five sample claims, noting that "the list is not exhaustive or complete, and the investigation into this matter is ongoing." *Id.* Citing 42 C.F.R. § 405.375(b)(2), the Suspension Notice informed APS of its right to submit a rebuttal statement with supporting evidence and explained that CMS's rebuttal determination was not an appealable initial determination. *Id.*

On August 16, 2024, APS submitted a rebuttal statement, undated letters from two APS pathologists associated with the five sample claims, and a September 2014 letter from the College of American Pathologists discussing a draft Medicare Local Coverage Determination. *See* APS Rebuttal, Exhibit 2 to Plaintiff's Motion for Preliminary Injunction, Doc. 9-3. APS did not include any supporting medical records.

On August 23, 2024, Qlarant notified APS that it received APS's August 16, 2024 rebuttal statement and materials on August 19, 2024, and had begun its review. *See* Declaration of Sherri G. McQueen ("McQueen Decl."), Exhibit A to Defendant's Motion to Dismiss, Doc. No. 22-1, ¶ 8.

On September 13, 2024, Qlarant responded by letter to APS on behalf of CMS, explaining that "[a]fter careful review of the information provided, [CMS] has determined that the suspension of Medicare payments to APS will continue." *See* CMS Response, Exhibit 3 to Plaintiff's Motion for Preliminary Injunction, Doc. No. 9-4. CMS then addressed each of the points raised by APS in

the rebuttal statement. With respect to beneficiary access to services, CMS noted that, prior to implementing the payment suspension, it made an individualized assessment "that there are enough pathologists and laboratories offering pathology services to Medicare beneficiaries in the area served by APS." *Id.*; *see also* McQueen Decl., Ex. A, Doc. No. 22-1, ¶ 6. CMS also addressed APS's financial concerns, explaining:

> CMS has the authority to implement payment suspensions when there is reliable information that an overpayment exists and/or a credible allegation of fraud. A payment suspension is implemented so that CMS can protect Medicare program funds while an investigation into a provider's or supplier's activities is conducted. Given the potential financial impact on providers, suppliers, and their employees, CMS takes great care in deciding when to implement a payment suspension.

*See* CMS Response, Pl.'s Mot., Ex. 3, Doc. No. 9-4.

CMS next addressed the basis for the suspension, referring back to the Suspension Notice and its explanation of the suspension's basis and the "non-exhaustive list of example claims that to which the credible allegations of fraud apply." *See id.* CMS went on to address medical necessity and lab arrangements. CMS explained that, for laboratory testing providers like APS, CMS must "verify that the supporting authenticated medical record documentation contains sufficient information supporting the ordered/provided tests are reasonable and necessary per 42 C.F.R. § 410.32." *Id.* Yet, APS's "narrative" rebuttal statement and "undated physician statements"— without supporting medical record documentation—are "insufficient to support the medical necessity of the services provided." *Id.* (noting that "submission of medical record evidence substantiating narrative comments" is required). CMS went on to explain that "the fact that a treating physician ordered a particular service does not alone establish that the service was medically necessary." *Id.* In the laboratory setting, CMS must "'verify that the supporting authenticated medical record documentation contains sufficient information supporting the ordered/provided tests are reasonable and necessary'" under Medicare regulations. *Id.* Finally,

CMS noted that APS also failed to provide any documentation substantiating its claims regarding its "Lean Lab" arrangements with referring providers. *Id.* For all of these reasons, CMS informed APS that the suspension would continue until the resolution of the investigation into APS's Medicare payments. *See id.*

On January 24, 2025, CMS notified APS that, pursuant to 42 C.F.R. § 405.371(b), the payment suspension would remain in place while the investigation of the credible allegations of fraud continues. *See* Suspension Extension Notice, Exhibit 4 to Plaintiff's Motion for Preliminary Injunction, Doc. No. 9-5. CMS explained: "CMS regulations authorize payment suspensions based on credible allegations of fraud to continue until resolution of the investigation including termination of any civil or criminal proceedings. *Id.* (citing 42 C.F.R. §§ 405.370 & 405.372(d)(3)(ii)). On July 3, 2025, and December 29, 2025, CMS issued additional Suspension Extension Notices to APS advising that the payment suspension based on credible allegations of fraud would remain in place. *See* Suspension Extension Notices, Exhibits 1 & 2 to Defendant's Status Report, Doc. Nos. 42-1, 42-2.

In previous briefing, the United States has detailed various steps it has taken in its investigation of APS, *see, e.g*, Brief in Support of Motion to Dismiss, Doc. No. 23, at 7. More recently, its investigation has led to a settlement of related allegations with an Atlanta gastroenterology practice that was formerly one of APS's largest customers.

## II.    ARGUMENT

### A. The Court Lacks Subject Matter Jurisdiction

The Court does not have subject matter jurisdiction over APS's lawsuit challenging an unreviewable agency action, and accordingly, the Court must dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1). At all times, "[t]he plaintiff bears the burden to establish subject matter

jurisdiction." *Two Eagle v. United States*, 57 F.4th 616, 620 (8th Cir. 2023). In addition, "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Likewise, a motion for preliminary and permanent injunction must be denied when a court lacks subject matter jurisdiction. *See Clarinda*, 100 F.3d at 531.

Subject matter jurisdiction may be challenged "on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993); *see also Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). If, as here, a party asserts a factual challenge, the Court may consider matters outside the pleadings, *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018); *Two Eagle*, 57 F.4th at 620 (citing *Croyle by & through Croyle v. United States*, 908 F.3d 377, 381 (8th Cir. 2018)), and the plaintiff loses the benefit of favorable inferences from its factual allegations, *Titus*, 4 F.3d at 593 n.1; *see also Harris v. P.A.M. Transport, Inc.*, 339 F.3d 635, 637 n.4 (8th Cir. 2003) (noting a factual challenge "does not . . . convert the 12(b)(1) motion to one for summary judgment"). Here, Defendants urge the Court to consider the Suspension Notice, APS's Rebuttal, the Rebuttal Response, and the Suspension Extension Notices in addition to APS's complaint to determine whether subject matter jurisdiction exists. A federal court must dismiss the action if, at any time, the court determines that it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *see* Fed. R. Civ. P. 12(b)(1).

### 1. Binding Eighth Circuit Precedent Requires Dismissal of This Action for Lack of Subject Matter Jurisdiction.

The Eighth Circuit's holding in *Clarinda* requires dismissal of this action for lack of subject matter jurisdiction. *See Clarinda*, 100 F.3d at 530-31. Just like APS, the plaintiff in *Clarinda* was

under DOJ investigation for alleged Medicare fraud and tried to challenge a temporary CMS payment suspension while the fraud investigation continued. *See id.* at 527. The Eighth Circuit held that there was no subject matter jurisdiction to hear the dispute because CMS had not reached a final determination as to whether the suspended funds would ultimately be paid to the provider. *See id.* at 530-31. Courts nationwide have reached the same outcome when considering similar challenges. *See, e.g.*, *VRA Enterprises, LLC v. Centers for Medicare and Medicaid Servs.*, Case No. 8:24-cv-1523-KKM-AAS, 2025 WL 1837521 (M.D. Fla. July 3, 2025); *Brooks Home Care Servs., Inc. v. Becerra*, No. 23CV-0477, 2024 WL 1348426 (N.D. Tex. Mar. 29, 2024); *San Diego Comprehensive Pain Mgt. Ctr. v. Becerra*, No. 21-cv-01739, 2021 WL 5741465 (S.D. Cal. Dec. 2, 2021); *Reg'l Home Health Care, Inc. v. Azar*, 488 F. Supp. 3d 827 (S.D. Iowa 2020); *Naushad v. U.S. Dep't. of Health & Human Servs.*, No. 4:20-CV-00018, 2020 WL 2800381 (E.D. Mo. May 29, 2020); *Simply Home Healthcare, LLC v. AdvanceMed Corp.*, No. 19-C-2313, 2020 WL 419416 (N.D. Ill. Jan. 27, 2020); *PainMD, LLC v. Azar*, No. 18-cv-01346, 2019 WL 4016120 (M.D. Tenn. Aug. 26, 2019); *True Health Diagnostics, LLC v. Azar*, 392 F. Supp. 3d 656 (E.D. Tex. 2019); *MedPro Health Providers, LLC v. Hargan*, No. 17 C 1568, 2017 WL 4699239 (N.D. Ill. Oct. 19, 2017); *Integrated Nursing & Health Servs. Inc. v. Centers for Medicare & Medicaid Servs.*, No. 17-683, 2017 WL 1373265 (D. Minn. Apr. 13, 2017).

APS has attempted to distinguish *Clarinda* by characterizing the APS payment suspension as "indefinite"; however, there is no merit to that argument. That the payment suspension may have continued longer than APS would prefer does not make it "indefinite." The Middle District of Florida recently analyzed and upheld a temporary payment suspension based on credible allegations of fraud that exceeded eighteen months. *See VRA Enterprises, LLC*, 2025 WL 1837521, at *4-5. The Court noted that cases with shorter suspensions or in which an overpayment

determination had been made amounted to "a distinction without a difference" because the provider "will be able to present its claims to CMS and obtain judicial review if CMS determines that VRA was overpaid. The suspension's eighteen-month duration is not legally significant for purposes of federal jurisdiction." *Id.* at *4. As the court in the Middle District of Tennessee noted when it upheld a challenged payment suspension, "[t]he accusation that CMS will never act on the claims presented is premature. Indeed, the regulations contemplate administrative suspension of payments during the pendency of a 'criminal or civil action.'" *Pain MD, LLC*, 2019 WL 4016120, at *5 (quoting 42 C.F.R. § 405.371(b)(3)(ii)). If the United States' investigation results in litigation, the payment suspension will end at the conclusion of that litigation, whether by settlement, dismissal, or judgment.

In addition to arguing that there is no end in sight to the APS payment suspension (to the contrary, there is: the resolution of the investigation as defined in the regulations), APS argues that the government is not actually engaged in an active fraud investigation, apparently because it has not received requests for information directly from CMS. This is absurd. The regulations contemplate that CMS may confer with HHS OIG and the Department of Justice because, in cases involving credible allegations of fraud, those are entities who may undertake the investigation, and, in this case, those are the very entities that have been investigating APS.

APS cannot ignore *Clarinda* or the governing statutory and regulatory scheme simply because it wants the government's investigation to end sooner. CMS's temporary suspension of payments to APS based on credible allegations of fraud was implemented pursuant to administrative procedure intended to protect the federal fisc from additional losses. *See* 42 U.S.C. § 1395y(o); 42 C.F.R. §§ 405.370-405.375. This administrative procedure expressly provides that "[t]he rescission of the suspension and the issuance of a final overpayment determination to the

provider or supplier may be delayed until resolution of the investigation." 42 C.F.R. § 405.372(c)(2)(ii). APS will have a full opportunity to challenge the fraud allegations through any litigation brought on behalf of the government in court, or any overpayment determination through administrative channels and to seek judicial review once the administrative remedies are exhausted. 42 U.S.C. § 1395ff(b)(1)(A); 42 C.F.R. § 405.904(a)(2). For these reasons, courts have declined to "upset the balance Congress chose to strike between the competing considerations of individual hardship and systemic efficiency." *MedPro Health Providers, LLC v. Hargan*, No. 17 C 1568, 2017 WL 4699239, at \*5 (N.D. Ill. Oct. 19, 2017) (citing *Heckler v. Ringer*, 466 U.S. 602, 627 (1984)). Accordingly, the Court must dismiss this action for lack of subject matter jurisdiction.

### 2.  *No Jurisdictional Exception Applies*

APS also fails to shoehorn its lawsuit into three narrow exceptions to the administrative exhaustion requirement. Specifically, APS alleges subject matter jurisdiction based on (1) "the preclusion-of-judicial review exception under 28 U.S.C. § 1331"; (2) "the collateral-claim exception under 42 U.S.C. § 405(g)"; and (3) "the Mandamus Act, 28 U.S.C. § 1361." *See* Compl., Doc. No. 1, ¶ 2. None of these authorities provides any basis for the Court to exercise jurisdiction here.

*First*, the Court does not have jurisdiction pursuant to the "extremely narrow" preclusion of judicial review exception. *See Reg'l Home Health Care*, 488 F. Supp. 3d at 837 (citing *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 19 (2000)), *aff'd sub nom. Reg'l Home Health Care, Inc. v. Becerra*, 19 F.4th 1043 (8th Cir. 2021). APS cannot show that it is facing "*complete* preclusion of judicial review." *Ill. Council*, 529 U.S. at 22-23. As the Eighth Circuit explained in *Clarinda*, a provider subject to a temporary payment suspension "will have its day in court" after the investigation concludes and "the Secretary has rendered [his] final decision." *Clarinda*, 100

12

F.3d at 530. "'[D]elay-related hardships' are the trade-off for voluntarily participating in such a 'massive, complex health and safety program as Medicare.'" *Reg'l Home Health Care*, 488 F. Supp. 3d at 827 (quoting *Ill. Council*, 529 U.S. at 13). APS's protestations that it may suffer financial hardship or lose customers does not affect this analysis. "While [a Medicare provider] may very well suffer irremediable harms while it awaits review, that is the consequence of the review scheme that Congress erected." *VRA Enterprises, LLC*, 2025 WL 1837521, at *5. APS will have the opportunity to seek judicial review, either through litigation in any case brought by the Government, or through the established administrative process (including judicial review) if an overpayment determination is made. Because APS has not shown that it will be unable to obtain judicial review, it cannot meet this "very narrow, and rarely applied" exception. *Timberlawn Mental Health Sys. v. Burwell*, No. 3:15-CV-2556-M, 2015 WL 4868842, at *3 (N.D. Tex. Aug. 13, 2015).

<u>Second</u>, APS has failed to demonstrate that the collateral claim exception applies. For the exception to apply, the claimant must (a) raise a colorable constitutional claim collateral to its substantive claim of entitlement, (b) show that irreparable harm would result from exhaustion, and (c) show that the purposes of exhaustion would not be served by requiring further administrative procedures. *Anderson v. Sullivan*, 959 F.2d 690, 693 (8th Cir. 1992). On the first prong, *Clarinda* rejected the same argument based on reasoning equally applicable here: APS cannot assert a colorable constitutional challenge to the temporary Medicare payment suspension because "it is not a violation of due process to temporarily withhold Medicare payments during an ongoing investigation for acts of fraud." *Clarinda*, 100 F.3d at 531. In *Clarinda*, "[t]he Eighth Circuit held that, just as in the case of total exclusion from the Medicare Program without a hearing, the temporary suspension of payments without pre-deprivation hearing 'is not a colorable

constitutional violation of due process.'" *Regional Home Health Care, Inc.*, 488 F. Supp. 3d at 837 (quoting Clarinda, 100 F.3d at 531). When a provider could not demonstrate a colorable constitutional claim, the Southern District of Iowa held the collateral claim exception did not apply because the provider could not meet the first of the three required prongs. *Id.* Because APS cannot demonstrate a colorable constitutional claim, APS cannot show it is entitled to an exception to the requirement for exhaustion to waive subject matter jurisdiction.

Nor is APS's claim "collateral" since awarding APS the relief it requests "would be tantamount to deciding the merits of its claim for benefits, and doing so would unquestionably interfere with HHS' administrative review process." *Hollywood Home Health Servs., Inc. v. Qlarant Quality Sols., Inc.*, Case No. CV 19-6817-DMG, 2020 WL 3964792, at *5 (C.D. Cal. Feb. 27, 2020); *see also Heckler*, 466 U.S. at 614 (challenge not collateral when it is "at bottom, a claim that [the plaintiff] should be paid"). APS is basically asking the Court "to order CMS to continue making payments with the understanding that CMS can try to recoup the money that may have been obtained through fraud at a future time. This is exactly the situation payment suspension is designed to prevent." *PainMD, LLC*, 2019 WL 4016120, at *4 (citing *Clarinda*, 100 F.3d at 529). As in *PainMD, LLC*, APS's reliance on *Family Rehab., Inc. v. Azar*, 886 F.3d 496 (5th Cir. 2018), is misplaced. *PainMD, LLC*, 2019 WL 4016120, at *5. In *Family Rehab*, Medicare began recouping overpayments while the provider was stuck in administrative limbo awaiting review of a final overpayment decision and facing a backlog of three to five years. *Id.* Unlike *Family Rehab*, APS is not being deprived of the administrative process required by the regulations, but instead asks the Court to override unilaterally the suspension determination and the conduct of any fraud investigation. *See PainMD, LLC*, 2019 WL 4016120, at *5.

14

On the second prong of the collateral claim exception, APS asks the Court to assume that APS will suffer irreparable harm based solely on conclusory allegations submitted in declarations from its CEO, Kevin Hannah, and one from its Director of Finance, Brandon Crain. As explained in Defendants' Opening Brief, *see* Defs.' Br., Doc. No. 23, at 27-29, these declarations are insufficient to demonstrate irreparable harm. In *Family Rehab*, which involved a provider of home health care services in which 95% of its revenue constituted Medicare payments, the combined threats of the provider going out of business and disruption to patients was sufficient to demonstrate irreparable injury. *True Health Diagnostics*, *LLC*, 392 F. Supp. 3d at 664. In contrast, when Medicare payments make up 30% of a provider's revenue and the services provided, such as diagnostic testing services, are readily available to patients, there is not irreparable harm. *Id.* (observing that the provider lab in question "made the business decision to continue participating in Medicare, and after more than two years, it cannot require this Court to redress its business decision by threatening imminent bankruptcy.").

On the third prong, the administrative scheme permits both a temporary payment suspension for the duration of an investigation into credible allegations of fraud, 42 C.F.R. § 405.371(a)(2), and an administrative process once that investigation concludes, 42 U.S.C. § 1395ff(b)(1)(A) (incorporating judicial review provision of the Social Security Act, 42 U.S.C. § 405(g)); 42 C.F.R. § 405.904(a)(2) (describing administrative appeals process). It thus reflects the balance struck by Congress between the potential for hardship caused by administrative delays and the downside of premature judicial intervention in the regulatory process.

*Third*, mandamus does not supply the Court with jurisdiction, as APS cannot establish (a) a clear and indisputable right to the relief sought, (b) that Defendants have a nondiscretionary duty to honor that right, or (c) that APS has no other adequate remedy. *Castillo v. Ridge*, 445 F.3d 1057,

1060-61 (8th Cir. 2006). On the first prong, APS ignores the plain language of the applicable regulations, which makes evident that APS has no right to the relief sought. *See* 42 C.F.R. § 405.372(c)(2)(ii) ("The rescission of the suspension and the issuance of a final overpayment determination to the provider or supplier may be delayed until resolution of the investigation."); *see also Naushad v. U.S. Dep't. of Health & Human Servs.*, No. 4:20-CV-00018, 2020 WL 2800381, at *4 (E.D. Mo. May 29, 2020) ("CMS has no obligation under 42 C.F.R. § 405.372(c)(2) to make any final determinations or lift the suspension before the investigation of [a provider] is resolved, which includes the pendency of a civil or criminal action."). APS argues that it has a right to an overpayment determination but fails to explain why it is entitled to mandamus relief for an overpayment determination *now*. Again, APS is attempting to jump the gun and short-circuit the government's fraud investigation and the CMS administrative process with no legal basis for doing so.

On the second prong, even if APS had a clear and indisputable right to the relief sought, APS cannot demonstrate that Defendants have a nondiscretionary duty to honor that right where "the decision to suspend payment or to continue a payment suspension is made at the sole discretion of CMS." *Naushad*, 2020 WL 2800381, at *4; *Integrated Nursing & Health Servs. Inc. v. CMS*, No. 17-683, 2017 WL 1373265, at *3 (D. Minn. Apr. 13, 2017); *see also* 42 C.F.R. § 405.371 (providing CMS "may" suspend payments and "may" decide not to suspend payments for "good cause"). APS argues that the government must issue an overpayment determination but cannot explain why the government must do so now, amid an ongoing investigation into APS that could inform the basis and amount of any such determination.

On the third prong, APS has another adequate remedy available: either the government will assert its claims in a lawsuit, in which case APS will have all the opportunity of any litigant to

challenge the government's claims, or APS can seek administrative relief for any overpayment determination. 42 C.F.R. § 405.904(a)(2) (describing four-step administrative review); *see also Clarinda*, 100 F.3d at 530-31. A delay in review while the government completes its investigation does not amount to denial of review. *See, e.g.*, *MedPro Health Providers*, 2017 WL 4699239, at *5 (declining to "upset the balance Congress chose to strike between the competing considerations of individual hardship and systemic efficiency").

### B. APS Failed to State a Claim for Relief

As outlined in Defendants' Opening Brief, *see* Defs.' Br., Doc. No. 23, at 19-24, the Court should also dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6) because APS failed to plead any claim for relief. Fundamentally, APS has not articulated a legitimate due process violation (Counts I and V) where the company will either be entitled to (i) the full process of civil litigation if the government files a complaint, or (ii) the administrative process with judicial review set forth by the applicable regulations.

As for APS's other counts, APS cannot succeed in Counts III or IV because APS has not pled that CMS acted beyond the authority granted to it by Congress or regulation. *See* 42 U.S.C. § 1395y(o); 42 C.F.R. Part 405, Subpart C; *Mandan, Hidatsa & Arikara Nation v. U.S. Dep't of the Interior*, 95 F.4th 573, 581 (8th Cir. 2024) (explaining that for an agency action to be "arbitrary and capricious, the agency must have failed to rely on the relevant factors, failed to consider an important aspect of the problem, or otherwise not engaged in reasoned decisionmaking in a manner not supportable by a rational basis"); *see also Fla. v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1287 (11th Cir. 2021).

Finally, Count II fails because APS cannot establish a clear and indisputable right to the relief sought, that the defendants have a nondiscretionary duty to honor that right, or that APS has

no other adequate remedy. *See Castillo*, 445 F.3d at 1060-61; *see also* Defs.' Br., Doc. No. 23, at 24. Similar to its due process claim, APS cannot claim it lacks an adequate remedy when it will be able to assert its position before a court in litigation, or through the administrative process followed by judicial review.

**C. APS Has Not Met Its Burden to Establish that a Preliminary or Permanent Injunction is Warranted.**

As in *Clarinda*, this Court should decline to consider APS's motion for preliminary or permanent injunction because the Court lacks subject matter jurisdiction. *See Clarinda*, 100 F.3d at 531. Even if the Court does not dismiss, the Court should deny APS's motion because APS cannot establish that such extraordinary relief is warranted. *Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694, 699 (8th Cir. 2021) ("A preliminary injunction is an extraordinary remedy, and the burden of establishing the propriety of an injunction is on the movant." (internal quotation marks omitted)). As explained above and in Defendants' prior briefing, APS cannot show that it has any chance, let alone a likely chance, of succeeding on the merits of any of its claims. APS also cannot establish irreparable harm.

APS has made vague and speculative assertions about its financial condition, which are insufficient to support a preliminary injunction. APS has likewise speculated, unsupported by any facts whatsoever, that Medicare beneficiaries will lose access to the services APS provides. *See* Pl.'s Reply & Resp. Br., Doc. No. 27, at 39. APS has stated (without offering any evidence) that federal payors make up approximately 30-40% of its revenue. Hannah Decl., Pl.'s Mot., Doc. No. 9-1, ¶ 7. But even taking APS at its word, courts have declined to find irreparable harm under similar circumstances. *See, e.g., True Health Diagnostics, LLC v. Azar,* 392 F. Supp. 3d 666, 681 (E.D. Tex. 2019) (rejecting identical argument where Medicare payments "only make up 30%" of plaintiff's revenue and explaining that there is "less disruption to Medicare patients" for a

"diagnostics laboratory, usually performing tests in an early stage of disease progression"); *Padda*, 37 F.4th at 1384-85 (denying injunction and finding no irreparable harm where Medicare payments comprised 33% of practice revenue). APS also does not explain why its customers, who largely ship specimens by mail to APS from across the country, would be unable to simply send their specimens to a different lab.

APS has also downplayed the risk that the government will not be made whole if the suspended funds are returned to APS. APS has a history (undisputed by APS) of making multi-million dollar distributions to its current and former owners, and there is a real risk that if APS the suspended funds are released to APS, they will be extracted from the company by its owners and the government will not be able to recover them even if it ultimately prevails in its effort to recover fraudulently obtained funds. Thus, the public interest and balance of the equities weigh heavily against issuing an injunction.

Respectfully submitted,

JONATHAN D. ROSS
United States Attorney
Eastern District of Arkansas

/s/     *Jamie Goss Dempsey*

_____

Jamie Goss Dempsey
Ark. Bar No. 2007239
Assistant U. S. Attorney
425 West Capitol Ave., Suite 500
Little Rock, Arkansas 72201
Tel.    (501) 340-2600
jamie.dempsey@usdoj.gov

19

## CERTIFICATE OF SERVICE

This will certify that a true and correct copy of the foregoing was filed with the Court *via* CM/ECF, which shall send notification to counsel of record.

/s/    *Jamie Goss Dempsey*

Jamie Goss Dempsey